UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 11-10058-RWZ

REDOUANE SLIMANE

v.

MICHAEL ASTRUE,
Commissioner of Social Security


ORDER

May 17, 2012

ZOBEL, D.J.


Plaintiff Redouane Slimane files this appeal under 42 U.S.C. § 405(g) to reverse the decision of defendant, Commissioner of Social Security Michael Astrue ("the Commissioner"), finding that he is not disabled and rejecting his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act.

Plaintiff raises two issues on appeal. First, he argues that the Administrative Law Judge ("ALJ") improperly and prejudicially minimized his work-related mental limitations by cherry-picking evidence from the record and mischaracterizing the reports and opinions of his treatment providers to understate the severity of his mental symptoms. Second, he claims that the ALJ's formal finding that he could "sustain concentration and persistence on simple tasks for 2 hours out of an 8 hour work day" mandates a reversal of the Commissioner's decision.

## I. Background

### A. Applicable Statutes and Regulations

Under the Social Security Act, a claimant seeking DIB or SSI benefits must prove that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ["the duration requirement"][.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). See Baez v. Astrue, 593 F.Supp.2d 310, 312 (D. Mass. 2009) ("disability" is defined the same way for purposes of DIB and SSI eligibility).

The ALJ employs a five-step sequential evaluation process to assess a claim for DIB or SSI benefits. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v), 404.1509, 416.909.  The evaluation may be concluded at any step in the process if it is determined that the claimant is or is not disabled. Id.  In order, the ALJ must determine: (1) whether the claimant is engaging in substantial gainful work activity; if not, (2) whether the claimant has a severe medical impairment that meets the duration requirement; if so, (3) whether the impairment meets or equals an entry in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, and meets the duration requirement; if not, (4) whether the claimant's residual functional capacity ("RFC") is sufficient to allow him to perform his past relevant work; and, if not, (5) whether in light of the claimant's RFC, age, education, and work experience, he can make an adjustment to other work. Id.

A claimant's "impairment(s), and any related symptoms, such as pain, may

cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). A claimant can adjust to other work if he can do any jobs that "exist in significant numbers in the national economy (either in the region where [he] live[s] or in several regions in the country)." 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1).

The claimant bears the burden of proof on steps one through four, 20 C.F.R. §§ 404.1520, 416.920; the Social Security Administration or state agency making the disability determination bears the burden of proof on step five. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). See also Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir 2001).

**B. Evidentiary Record**

Plaintiff is a 46-year old Algerian immigrant. He came to the United States in 1995 to pursue a Ph.D. in mathematics, but had to work instead because he lacked the funds to pursue his education. His past relevant work experience is as a security guard. On July 7, 2008,[1] he filed applications for DIB and SSI benefits, alleging disability as of Dec. 6, 2007. He has described his alleged disability as "depression and memory loss" and explained that it limits his ability to work because he gets nervous and forgetful, argues with others, talks to himself, and has trouble concentrating. He has not worked since his alleged onset date.

---

[1] Although plaintiff's applications are dated July 23, 2008, the Social Security Administration's Disability Determination and Transmittal Forms and the ALJ's decision indicate that plaintiff filed his applications on July 7, 2008.

### 1.  Plaintiff's Treatment Providers

Plaintiff was regularly treated at East Boston Neighborhood Health Center, mostly to monitor his diabetes.  He began receiving mental health treatment at Aftercare Services, Inc. from therapist Bruce Caldwell and psychiatrist Phillip Hill, M.D., starting in July and August 2008, respectively.[2]  The evidentiary record contains treatment notes and letters from these providers through February 2010, which are discussed in more detail below.

### 2.  State Agency Reviewers

In October 2008, a state agency physician, M.A. Gopal, M.D., reviewed plaintiff's records and conducted a physical RFC assessment.  Dr. Gopal opined that certain environmental limitations were warranted; namely, avoiding extreme cold, humidity, fumes, odors, dusts, gases, and poor ventilation.  These limitations are not in issue.

In November 2008 and March 2009, respectively, Ronald Nappi, Ed.D., and Sumner Stone, M.D., consultants with the state Department of Developmental Services ("DDS"), each reviewed plaintiff's records and conducted a mental RFC assessment. Their opinions are discussed below.

### 3.  Plaintiff's Reports and Testimony

In various Social Security Administration function reports, plaintiff has described

---

[2] Plaintiff's medical records indicate that from Jan. 14, 2009 through May 11, 2009, he saw a different therapist at Aftercare Services named "Mark." Compare Tr. 443-54 (psychotherapy progress notes, dated 1/14/2009 - 5/11/2009, signature unclear), with Tr. 455-74 (psychotherapy progress notes dated 7/21/2008 - 11/25/2008, signed "Bruce T. Caldwell, MED") and Tr. 418-42 (Caldwell progress notes, signed and dated 5/22/2009 - 2/16/2010). See also Tr. 502 (Dr. Hill treatment note dated 1/14/2009 reads: " . . . . Ran out of Risperdal 1 month ago and did not know he had a refill.  Mood is 'nice.' New therapist Mark.").  The parties and the ALJ's decision do not mention this therapist, and appear to treat "Mark's" progress notes as those of Mr. Caldwell.

his daily activities as rising early; showering and eating breakfast; going out "around the city" or doing some shopping for the day; returning home to cook and eat lunch; sometimes visiting friends; cooking dinner and then going to bed.  Tr. 169, 187.  He also has reported that he has no trouble with personal care (e.g., dressing, bathing, brushing teeth); shops for groceries and prepares his own meals daily; cleans and does laundry; goes to church every week; is "always" outside, and uses public transportation. Tr. 47-48, 170-72, 188-90.  He practices his hobbies of reading and sports "often" but claims that, since the onset of his alleged disability, he cannot concentrate and is always thinking about something else when he is doing these things.  Tr. 46, 191. While he sometimes meets his friends in coffee shops, he complains that he has problems getting along with others because he cannot concentrate, often thinks about other things, and argues with other people.  Tr. 46, 193.  He also reported that he is "always lost" when it comes to following spoken instructions, but he follows written instructions well.  Tr. 174, 193.

### C.  Procedural History

After plaintiff's applications were denied initially and upon reconsideration, he requested an administrative hearing.  ALJ J. Alan Mackay held a hearing on May 28, 2010, at which plaintiff and vocational expert Ruth Baruch testified.  Plaintiff's non-attorney representative, Arthur Kaufman, was also present.  On June 23, 2010, the ALJ decided that plaintiff was not disabled.  Although the Decision Review Board selected the ALJ's decision for review, it did not act within the requisite 90-day time period. Thus, on November 4, 2010, the ALJ's decision became the final decision of the

Commissioner.

### D. ALJ's Decision

The ALJ found that plaintiff had not engaged in substantial gainful activity since December 6, 2007.  He found that plaintiff had severe impairments – major depressive disorder without psychosis, general anxiety disorder, and dyspnea (shortness of breath) – but that his impairments did not meet or equal one of those on the Listing of Impairments.

He then made findings regarding plaintiff's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he must avoid concentrated exposure to extreme cold, humidity, fumes, odors, dust, gases, and areas of poor ventilation; he can understand and remember simple instructions; he can sustain concentration and persistence on simple tasks for 2 hours out of an 8 hour work day; and he can adapt to routine work changes.

Tr. 17.  In reaching his RFC finding, the ALJ relied on plaintiff's hearing testimony about his limitations, but found that plaintiff's statements "concerning the intensity, persistence, and limiting effects" of his symptoms "are not credible to the extent they are inconsistent" with the RFC assessment. Tr. 18.

The ALJ also relied on treatment notes and opinions of therapist Caldwell and Dr. Hill.  He noted that the medical evidence did not support a finding that plaintiff's depression and anxiety were "completely disabling or permanent," but rather that these psychiatric impairments could mostly be resolved through a "combination of medication and individualized therapy, whose goal is to change the claimant's negative thought

patterns[.]" Tr. 18.  The ALJ further noted that plaintiff's mood has improved when he

has taken his medications as prescribed, and that plaintiff has "a history of non-

compliance to his medication regimen, which would likely contribute to [his] mood

instability and continued complaints of depressive symptoms and anxiety."  Tr. 18.  He

found that, despite plaintiff's presenting as depressed and anxious at treatment

sessions, his

> speech was clear; his thought process, insight and judgment were intact and
> logical; his memory was intact; he had fleeting suicidal and no homicidal
> ideation; he was oriented to time, place and person; he denied paranoia; and
> he operated at a Global Assessment of functioning of 50-53, indicating only
> moderate difficulty in social, occupational and school functioning.

Tr. 18 (citing treatment notes from Mr. Caldwell and Dr. Hill).

The ALJ also noted Mr. Caldwell's opinion that plaintiff's "learned helplessness

would be overcome by long term cognitive behavioral therapy," and cited the success

of Caldwell's treatment plan to "reframe angry unrealistic expectations that [plaintiff]

can't work or have relationships, into more positive goals and strategies to reduce self-

isolation, depressive symptoms and anger producing situations."  Tr. 19.  He

referenced Caldwell's conclusion that plaintiff appeared capable of working

independently despite his anger management problems.  He also concluded that the

indefinite medical record supported a finding that the voices which plaintiff complained

of hearing were negative "self-talk" rather than auditory hallucinations.

He incorporated into his RFC findings Dr. Gopal's recommendations about

plaintiff's environmental limitations, as well as the functional limitations in maintaining

concentration, persistence or pace which were assessed by Dr. Stone and Dr. Nappi.[3]

At step four, the ALJ found that plaintiff was unable to perform any of his past relevant work as a security guard.  Relying on testimony from vocational expert Baruch, at step five, he found that plaintiff's age, education, work experience, and RFC qualified him to do other jobs that exist in significant numbers in the national economy; specifically, hand package inspector, mail sorter, and bench assembler.  He therefore found that plaintiff was not disabled under the Social Security Act and denied his application for benefits.

## II.  Standard of Review

The Commissioner's findings of fact are conclusive if they are supported by substantial evidence and reached using the correct legal standard.  42 U.S.C. § 405(g); Seavey, 276 F.3d at 9.  "[T]he responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ." Seavey, 276 F.3d at 10.  See also Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) (the Commissioner has "prime responsibility" for determining "issues of credibility and the drawing of permissible inference from evidentiary facts").  The court must accept the Commissioner's findings if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez, 647 F.2d at 222.  The court must uphold the Commissioner's determination "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez

_____

[3] For a discussion of these limitations, see infra Part III.A.

Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). "While 'substantial evidence' is 'more than a scintilla,' it certainly does not approach the preponderance-of-the-evidence standard normally found in civil cases." Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003) (reviewing an appeal from a denial of workers' compensation benefits) (quoting Sprague v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor, 688 F.2d 862, 865-66 (1st Cir. 1982)).

**III. Analysis**

**A. Scope of Plaintiff's Mental RFC**

Plaintiff argues that the ALJ's finding that "he can sustain concentration and persistence on simple tasks for 2 hours out of an 8 hour work day" mandates a finding that he is disabled, because the ability to maintain concentration for only two hours during a workday would not meet an employer's minimum expectations for an unskilled position. Pl. Br. at 5 (Docket # 16). The Commissioner concedes that "[i]f this was indeed the ALJ's finding . . . the limitation would likely preclude Plaintiff's ability to perform any work." Def. Br. at 16 (Docket # 19). But he argues that the finding, as expressed, was "clearly a clerical error" because the underpinning record reflects that plaintiff "retained the ability to sustain concentration and pace for up to two hours at a time in the course of an eight-hour workday, as opposed to only two hours total." Id.

Whether the ALJ's formal finding was a clerical error or simply inartful phrasing, the record supports the Commissioner's interpretation. In his written decision, the ALJ accorded "substantial weight to the DDS consultants' [Drs. Nappi's and Stone's]

assessments and opinions of [plaintiff's] mild limitations in maintaining concentration, persistence or pace. . . ." Tr. 20.  Dr. Nappi found that plaintiff "is able to focus attention and maintain concentration for 2-hour periods in the course of a normal 8-hour workday."  Tr. 312  (Mental RFC Assessment, Dr. Ronald Nappi, Nov. 13, 2008). Dr. Stone found that plaintiff "can concentrate sufficiently to carry out simple tasks." Tr. 316.  Among other things, both assessed plaintiff's (1) "ability to maintain attention and concentration for extended periods," Tr. 310, 314; and (2) "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 311, 315.  Both rated plaintiff as "moderately," not "markedly," limited in these categories.[4]  Tr. 310-11, 314-15.   Dr. Nappi found that plaintiff was "not significantly limited" in his ability to "carry out very short and simple instructions," "sustain an ordinary routine without special supervision," and "make simple work-related decisions,"  Tr. 310, and Dr. Stone found no evidence of any limitation in plaintiff's ability to conduct these activities. Tr. 314.  In short, plaintiff's reading of the ALJ's formal finding is simply not supported by the record.

### B.  ALJ's Assessment of the Medical Evidence

Plaintiff claims that the ALJ substituted his own judgment and conclusions for those of plaintiff's medical providers and selected only those pieces of evidence that

---

[4] The mental RFC assessment form which each doctor completed permitted him to rank or assign a degree of limitation for each mental activity.  The possible rankings were: (1) Not Significantly Limited; (2) Moderately Limited; (3) Markedly Limited; (4) No Evidence of Limitation in this Category; and (5) Not Ratable on Available Evidence. See, e.g., Tr. 310.

supported the RFC finding.  For example, he claims that the ALJ ignored treatment

notes that he suffered from memory problems (Tr. 496), talked to himself (Tr. 496), and

had difficulty concentrating (Tr. 504).[5]  While the record indicates that plaintiff

frequently complained of such symptoms, the ALJ's RFC finding – which incorporated

environmental and functional limitations described above – addresses those complaints

and takes them into account.  Furthermore, several of those treatment notes consist of

his health care providers' descriptions of plaintiff's alleged subjective symptoms, see

e.g., Tr. 496 (Dr. Hill treatment note quoting plaintiff: "I talk to myself."); Tr. 227, 504

(Dr. Hill treatment note citing patient's reported "trouble concentrating"); Tr. 216

(Caldwell treatment note: "patient. . . alleges recurrent, persistent and incapacitating

thoughts"), which the ALJ is not obliged to credit. Cf. Rodriguez Pagan, 819 F.2d at 3

(affirming the ALJ's decision to discredit opinions from two treating physicians where

they "relied excessively on claimant's subjective complaints rather than objective

medical findings").

Plaintiff makes much of a December 16, 2009, letter written by Mr. Caldwell and

co-signed by Dr. Hill, the self-described purpose of which was "to call attention to

[plaintiff's] struggles as a middle-aged man trying to manage the capricious dynamics of

a competitive urban milieu." Tr. 519.  It describes his daily life as "a morbid travail" and

plaintiff as "compelled to manage [his symptoms] in the confines of his home as a

---

[5] Contrary to plaintiff's assertions, the record does not reflect that he attempted to commit
suicide by jumping in front of a train.  Instead, Dr. Hill's notes read: "Admits recent suicidal ideation
(jumping in front of a subway) but no immediate plan or intent and I do not think he is an immediate risk
for suicide."  Tr. 481 (emphasis added).

morbid recluse." Id.  The letter further relates that "any attempt to go out-of-doors to brave the elements and negotiate diverse cultural enclaves in an effort to conduct personal business or attend personal needs can occasionally be daunting if not an ordeal."  Tr. 519.

The "occasionally daunting" nature of attending to personal business is not inconsistent with the limitations which the ALJ incorporated into his RFC finding. Moreover, the description of plaintiff as a "morbid recluse" is contradicted by plaintiff's own reports and testimony.  See Tr. 35-36, 39, 44, 47, 48, 172, 173, 178, 187-88 (plaintiff reporting or testifying that he shops for groceries every day, cooks simple meals, cleans his room twice a week, reads, plays sports, goes to church weekly, takes public transportation, and visits with friends).  Dr. Hill and Mr. Caldwell's opinion that plaintiff's condition would preclude him from "functioning at a capacity that would permit him to perform the duties and responsibilities of regular/consistent employment" (Tr. 416, 519) is not entitled to any special significance because it is an opinion on an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1)-(3), 416.927(e)(1)-(3) (further describing issues reserved to the Commissioner as "administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability").

Plaintiff also disputes the ALJ's conclusion that clinical findings by his treatment providers "established that [his] psychiatric symptoms were only mild in severity and were surmountable with long term cognitive behavioral therapy and medication." Tr. 20. Evidence in the record supports the conclusion that plaintiff's condition was improving

with medication.  On August 4, 2008, Mr. Caldwell noted: "The patient is making slow progress; but progress is definitely apparent since psychotherapy began." Tr. 253. After each of several different visits between March and June 2009, Dr. Hill noted that therapy was going well and/or that plaintiff felt medication was helpful. Tr. 494, 496, 498, 500.

In determining plaintiff's RFC, the ALJ gave substantial weight to the opinions of Drs. Nappi and Stone, both of whom assessed functional limitations in plaintiff's ability to concentrate and maintain a persistent pace during the work day.  He is not required to give greater weight on the issue to the opinions of plaintiff's treatment providers. Arroyo v. Sec'y of Health and Human Servs., 932 F.2d 82, 89 (1st Cir. 1991) (citing Tremblay v. Sec'y of Health and Human Servs., 676 F.2d 11, 13 (1st Cir. 1982)). See also 20 C.F.R. § 404.1527(c) (describing factors used to consider how much weight to give to any medical opinion); Amaral v. Comm'r of Social Sec., 797 F.Supp.2d 154, 162 (D. Mass. 2010) ("On issues reserved to the Commissioner, such as residual function capacity findings, examining sources are not given special significance by mere virtue of the existence of treating relationships.  20 C.F.R. § 404.1527(e)(2)-(3).  The hearing officer may choose not to adopt examining source opinions if they are inconsistent with the other substantial evidence in the record.").

Even if the ALJ understated the severity of plaintiff's mental condition in explaining his decision, he still assessed significant limitations on plaintiff's abilities – limitations which are consistent with plaintiff's mental condition as described by his treatment providers, neither of whom assessed any limitations in excess of those found

by the ALJ.  Thus, even if the ALJ mischaracterized their opinions, such error was not prejudicial because it did not affect the ALJ's ultimate disability determination. <u>Kurzon v. U.S. Postal Serv.</u>, 539 F.2d 788, 796 (1st Cir. 1976) (mistake by administrative body "does not mechanically compel reversal . . . [when it is] one that clearly had no bearing on the procedure used or the substance of the decision reached") (internal quotation marks omitted); <u>Perez Torres v. Sec'y of Health and Human Servs.</u>, 890 F.2d 1251, 1255 (1st Cir. 1989) (ALJ's misreading of the record to find that claimant had never alleged a mental condition was harmless error in light of the entire record).  For the aforementioned reasons, I find that any error alleged was harmless and that the ALJ's disability determination is supported by substantial evidence.

## IV.  Conclusion

Defendant's Motion to Affirm the Commissioner's Decision (Docket # 18) is ALLOWED.  Plaintiff's Motion to Reverse the Decision of the Commissioner (Docket # 15) is DENIED.  Judgment may be entered affirming the decision of the Commissioner.


    ____May 17, 2012____                    ____/s/Rya W. Zobel____
           DATE                              RYA W. ZOBEL
                                        UNITED STATES DISTRICT JUDGE